**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

NATHEN BARTON, individually and
on behalf of a class of all persons and
entities similarly situated,

                    Plaintiff,

      v.

PAPA MURPHY'S COMPANY
STORES INC.,

                  Defendant.

No. 3:26-cv-05168-JNW

Honorable Judge Jamal N. Whitehead

**PLAINTIFF'S BRIEF IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS        i

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND ............................................................................................................. 3

III.  LEGAL STANDARD....................................................................................................... 4

IV.   ARGUMENT.................................................................................................................... 5

    A.   The TCPA's Text, Structure, and Precedent Confirm That the Do-Not-Call Provisions Apply to Telemarketing Text Message Calls........................................................................ 5

        i.   Earlier this year, the Ninth Circuit unequivocally stated that a "text message" constitutes a "call" within the meaning of the TCPA. ............................................... 5

        ii. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text message calls. ........................................................................... 10

        iii.  Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.......................................................................................................................... 12

        iv.  The plain meaning of the word "call" includes text messages .................................. 19

    B.   As Numerous Ninth Circuit Courts Have Held, Plaintiff Pleads Facts Supporting His Second Cause of Action........................................................................................................ 21

V.    CONCLUSION................................................................................................................ 24

CERTIFICATE OF SERVICE ................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abboud v. Circle K Stores Inc.*,
731 F. Supp. 3d 1094 (D. Ariz. 2024) ................................................................. 7

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*,
708 F.3d 737 (6th Cir. 2013) ............................................................................. 20

*Bosley v. A Bradley Hosp. LLC,*
2025 WL 2686984 (S.D. Fla. Sept. 19, 2025) .................................................... 13

*Breda v. Cellco P'ship*,
934 F.3d 1 (1st Cir. 2019) ................................................................................... 7

*Bruce Katz, M.D., P.C. v. Focus Forward, LLC*,
22 F.4th 368 (2d Cir. 2022) ................................................................................. 7

*Campbell-Ewald Co. v. Gomez*,
577 U.S. 153 (2016) ..................................................................................... 12, 21

*Chevron v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ............................................................................................. 5

*Connor v. Servicequick Inc.*,
2025 WL 2855393 (D. Colo. Oct. 8, 2025) ....................................................... 13

*Cranor v. 5 Star Nutrition, L.L.C.*,
998 F.3d 686 (5th Cir. 2021) ............................................................................... 7

*Davis v. CVS Pharmacy, Inc.*,
797 F. Supp. 3d 1270, 2025 WL 2491195 (N.D. Fla. 2025). ........................ 13-15

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ........................................................................... 10

*Dawson v. Porch.com*,
2024 WL 4765159 (W.D. Wash. 2024) .............................................................. 13

*Dominguez v. Yahoo, Inc.*,
894 F.3d 116 (3d Cir. 2018) ................................................................................ 7

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023) ............................................................................ 7

*Evers v. CampaignSidekick, LLC,*
2025 WL 2896818 (N.D. Ill. Oct. 10, 2025)........................................................... 13

*Esquivel v. Mona Lee, Inc.,*
2025 WL 3275607 (S.D. Cal. Nov. 24, 2025) ......................................................... 1

*Gager v. Dell Fin. Servs., LLC,*
727 F.3d 265 (3d Cir. 2013)................................................................................... 7

*Gilligan v. Jamco Dev. Corp.,*
108 F.3d 246 (9th Cir. 1997). ................................................................................ 4

*Howard v. Republican Nat'l Comm.,*
164 F.4th 1119 (9th Cir. 2026) ..................................................................... *passim*

*Hudson v. Palm Beach Tan, Inc.,*
2024 WL 4190513 (M.D.N.C. Sept. 13, 2024)...................................................... 13

*Hulce v. Zipongo Inc.,*
132 F.4th 493 (7th Cir. 2025) ............................................................................... 10

*IBP, Inc. v. Alvarez,*
546 U.S. 21 (2005).................................................................................................. 7

*Jones v. Blackstone Medical Services, LLC,*
2025 WL 2042764 (C.D. Ill. 2025)............................................................... *passim*

*Keating v. Peterson's Nelnet, LLC,*
615 F. App'x 365 (6th Cir. 2015). ....................................................................... 12

*Krakauer v. Dish Network, LLC,*
925 F.3d 643, 650 (4th Cir. 2019) ....................................................................... 12

*Lozano v. Twentieth Century Fox Film Corp.,*
702 F. Supp. 2d 999 (N.D. Ill. 2010) ............................................................... 2, 20

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024)..................................................................................... *passim*

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
519 F.3d 1025 (9th Cir. 2008). .............................................................................. 5

*Matthews v. Mid City Cannabis Club, Inc.,*
2021 WL 1567496 (C.D. Cal. Mar. 2, 2021)......................................................... 4

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                iv

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
    606 U.S. 146 (2025) ............................................................................................. 2

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d Cir. 2019) ................................................................................... 8

*Mujahid v. Newity, LLC*,
    2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .................................................. 1, 13

*Nat'l Cable & Telecom Ass'n v. FCC*,
    567 F.3d 659 (D.C. Cir. 2009) ............................................................................. 12

*New Prime Inc. v. Oliveira*,
    586 U.S. 105 (2019) ............................................................................................. 14

*Newell v. Child.'s Dental Health Assocs., LLC*,
    2026 U.S. Dist. LEXIS 74360 (E.D. Pa. 2026) ................................................... 11

*Newell v. JR Cap., LLC*,
    791 F. Supp. 3d 571 (E.D. Pa. 2025) .................................................................. 24

*Novia v. Mobiz, Inc.*,
    2026 WL 752181 (D. Mass. Mar. 17, 2026) ........................................................ 24

*Oncale v. Sundowner Offshore Servs.*,
    523 U.S. 75 (1998) ............................................................................................... 12

*Pariseau v. Built USA, LLC*,
    619 F. Supp. 3d 1203 (M.D. Fla. 2022) .............................................................. 13

*Pulsifer v. United States*,
    601 U.S. 124 (2024) ............................................................................................... 7

*Rabbitt v. Rohrman Midwest Motors, Inc.*,
    2026 WL 851279 (N.D. Ill. Mar. 27, 2026) ......................................................... 11

*Radvansky v. 1-800-Flowers.com, Inc.*,
    2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ......................................................... 14

*Sagar v. Kelly Auto. Grp., Inc.*,
    2021 WL 5567408 (D. Mass. Nov. 29, 2021) ................................................. 13, 20

*Salazar v. Nat'l Basketball Ass'n*,
    118 F.4th 533 (2d Cir. 2024). .............................................................................. 12

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    v

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ......................................................................... *passim*

*Sayed v. Naturopathic Holistic Health, Inc.*,
    2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ........................................................ 14

*Schaevitz v. Braman Hyundai, Inc.*,
    437 F. Supp. 3d 1237 (S.D. Fla. 2019) ................................................................. 20

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)............................................................................................... 19

*States Postal Serv. v. Konan*,
    146 S. Ct. 736 (2026)............................................................................................ 20

*Stockdale v. Ins. Cos.*,
    87 U.S. (20 Wall.) 323 (1873) .............................................................................. 20

*Taha v. Momentive Software, Inc.*, No.
    2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026)................................... *passim*

*Trim v. Reward Zone USA LLC*,
    76 F.4th 1157 (9th Cir. 2023) ............................................................................ 6, 9

*United States v. Ezeta*,
    752 F.3d 1182 (9th Cir. 2014) .............................................................................. 19

*United States v. Paulson*,
    68 F.4th 528 (9th Cir. 2023) ................................................................................. 17

*Warciak v. Subway Rests., Inc.*,
    949 F.3d 354 (7th Cir. 2020) .................................................................................. 7

*Wilson v. Better Mortg. Corp.*,
    2025 U.S. Dist. LEXIS 251694 (S.D.N.Y. Dec. 5, 2025) ................................. *passim*

*Wilson v. MEDVIDI Inc.*,
    2025 U.S. Dist. LEXIS 198827 (N.D. Cal. 2025) .......................................... 1, 7, 13

*Wilson v. Easy Spirit, LLC*,
    2026 WL 884170 (D. Conn. Mar. 31, 2026) .......................................................... 11

*Wilson v. Skopos Fin., LLC*,
    2025 WL 2029274 (D. Or. 2025)...................................................................... *passim*

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                vi

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 4

47 C.F.R. § 64.1200(c)(2)............................................................................................ 3

47 C.F.R. § 64.1601 ......................................................................................... *passim*

47 CFR § 64.1600(b) ............................................................................................... 22

47 CFR § 64.1600(e)................................................................................................ 21

*In re Rules & Regulations Implementing the TCPA,*
    18 FCC Rcd. 14014 (2003) ........................................................................ 1, 11–12

*Telephone Consumer Protection Act of 1991,*
    Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395 (1991) ...................................... 13

**Statutes**

47 U.S.C. § 225 ................................................................................................ 9, 16

47 U.S.C. § 225(d) ............................................................................................... 16

47 U.S.C. § 227.............................................................................................. *passim*

47 U.S.C. § 227(a)(4) ...................................................................................... *passim*

47 U.S.C. § 227(b) ......................................................................................... *passim*

47 U.S.C. § 227(c) ......................................................................................... *passim*

47 U.S.C. § 227(e) .............................................................................................. 11

**Other Authorities**

*Consolidated Appropriations Act of 2018,*
    132 Stat. at 1094................................................................................................ 11

*Random House Webster's College Dictionary* (1991)................................................... 19

*Oxford English Dictionary* (2d ed.1989) .................................................................... 20

*Black's Law Dictionary* (6th ed. 1990) ...................................................................... 10

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS            vii

*Oxford English Dictionary* (2d ed. 1989) ...................................................................... 10

*Webster's New Collegiate Dictionary* (9th ed. 1991) .................................................. 10

*Webster's Third New International Dictionary* (1981 ed.) ............................................ 19

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS            viii

## I.     INTRODUCTION

A statute enacted in 1991 that prohibits "vehicles" in a park applies equally to sedans and Cybertrucks, even though Cybertrucks did not exist at the time. So too here. The Telephone Consumer Protection Act ("TCPA") authorizes the Federal Communications Commission ("FCC") to establish by regulation "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations," 47 U.S.C. § 227(c)(3), and to prohibit telemarketers from "making or transmitting a telephone solicitation" to phone numbers on that list, § 227(c)(3)(F).

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376, *7-8 (C.D. Ca. March 11, 2026); *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    1

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person" with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Papa Murphy's Company Stores Inc ("Papa Murphy") has now filed a motion to dismiss. It makes a big ask. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So, Papa Murphy's sees a chance to swing for the fences: It asks this Court to reject the FCC's longstanding interpretation and hold that the Do Not Call List protects only voice calls, potentially upending Do Not Call List protection for millions of Americans.

Luckily for consumers nationwide, Papa Murphy's arguments have been nearly uniformly rejected and this Court should decline that request, as the Ninth Circuit Court of Appeals did earlier this year with respect to text messages in *Howard v. Republican Nat'l*

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    2

*Comm.*, 164 F.4th 1119, 1121 (9th Cir. 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA").

Defendant's challenge to Plaintiff's caller identification claim fares no better. The governing regulation requires telemarketers to transmit accurate and complete caller identification information, including a valid, callable telephone number and the name of the telemarketer. 47 C.F.R. § 64.1601(e). Plaintiff alleges that Defendant instead transmitted a non-routable five-digit short code that cannot be called back, does not permit a do-not-call request, and was not accompanied by the required caller identification name. Those allegations, accepted as true, establish violations of multiple independent requirements of the regulation—any one of which is sufficient to state a claim. Defendant's attempt to recast these factual allegations as legally insufficient ignores the text of the regulation.

For all of these reasons, and those set forth more fully below, the Court should deny Defendant's Motion to Dismiss in its entirety.

## II.   BACKGROUND

The TCPA was enacted in 1991 to protect consumers from intrusive telemarketing practices. Congress recognized that unwanted telemarketing calls invade privacy, disrupt daily life, and burden consumers with unwanted communications. To address those concerns, Congress directed the FCC to establish a national database of consumers who object to receiving telemarketing calls and to prohibit telemarketers from contacting those numbers. See 47 U.S.C. § 227(c). Pursuant to that authority, the FCC created the National Do Not Call Registry ("DNC Registry"), which allows consumers to register their telephone numbers to indicate that they do not wish to receive telemarketing solicitations. See 47 C.F.R. § 64.1200(c)(2). Once a number is registered, telemarketers are prohibited from initiating telephone solicitations to that number absent prior express consent.

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    3

On February 23, 2026, Plaintiff Nathen Barton filed a Class Action Complaint against Papa Murphy's Company Stores, Inc., alleging violations of the TCPA and CEMA. *See* Complaint, ECF No. 1. Plaintiff alleges that he is a Washington resident who uses a cellular telephone number associated with the 360 area code and that his number was listed on the National Do Not Call Registry more than thirty days before the alleged communications. *Id.*

The Complaint further alleges that Plaintiff received approximately forty-two (42) text messages from Defendant between March 2025 and the filing of the Complaint. These messages allegedly promoted Papa Murphy's products and were sent from the Caller ID number 90421. *Id.* Plaintiff contends that he did not provide consent to receive these messages and that the communications invaded his privacy, consumed his phone's resources, and caused annoyance and disruption. *Id.*

Based on these allegations, Plaintiff asserts three primary causes of action: (1) violations of the TCPA's do-not-call provisions, (2) violations of the TCPA's caller identification requirements, and (3) violations of Washington's CEMA and CPA. *Id.* Defendant has moved to dismiss Counts 1 and 2 of the Complaint, but does not address the CEMA claims. This response follows.

## III.   LEGAL STANDARD

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed as the Ninth Circuit noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS          4

construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.    ARGUMENT

### A.    The TCPA's Text, Structure, and Precedent Confirm That the Do-Not-Call Provisions Apply to Telemarketing Text Message Calls

The TCPA authorizes recipients of unwanted "telephone solicitations" to sue for violations of the FCC's Do Not Call List rules. 47 U.S.C. § 227(c)(5). In relevant part, that private right of action says anyone may sue who "has received more than one telephone call within any 12-month period … in violation of the regulations." *Id.*

The Do Not Call List provisions authorize the FCC to regulate "telephone solicitations," a defined term that plainly includes text messages. *See* 47 U.S.C. § 227(a)(4), (c)(1), (c)(3)(F). And the private right of action has the same scope as those other provisions.

#### i.    Earlier this year, the Ninth Circuit unequivocally stated that a "text message" constitutes a "call" within the meaning of the TCPA.

Since *Satterfield*, no Court in the Ninth Circuit has dismissed a TCPA case holding that a text message is not a call. The argument is foreclosed. Indeed, in *Howard* 164 F.4th at 1121-24, the Ninth Circuit affirmed *Satterfield*'s central holding in another TCPA case:

> The key question, then, is whether the sending of this text message involved (1) "mak[ing] a[ ] call" or "initiat[ing] a[ ] telephone call" to that phone number, (2) "using an artificial or prerecorded voice." *Id.*

> We have previously held that, under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was "reasonable" to defer to the FCC's conclusion that the term "call" in § 227 includes a "text message." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Although we thus framed our holding in *Satterfield* in terms of the then-applicable deference required to be given to the FCC's construction, we think it is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Chevron* is overruled."). *Satterfield* emphasized two key points about statutory construction

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    5

that supported the FCC's understanding of a "call," *see Satterfield*, 569 F.3d at 953–54, and even under de novo review, those same two points support the conclusion that a "text message" constitutes a "call" within the meaning of the TCPA… the RNC's text message was a 'call.'

*Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026). There's not much Papa Murphy's can say to that analysis, so it instead claims that the Ninth Circuit's decision in *Howard*, however, was also limited to claims asserted under Section 227(b), rather than claims under Section 227(c). However, this argument was squarely addressed, and rejected, in *Taha*:

> While both cases reached these decisions in the context of analyzing § 227(b) of the TCPA, rather than § 227(c)(5) at issue here, neither *Satterfield* nor *Howard* elected to use language to limit the scope of their holdings. Both cases state that their holdings apply to "the TCPA," and that is how this Court interprets them.

> Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or [an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is reference in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *7-*8 (C.D. Cal. Mar. 11, 2026) (cleaned up). The *Better Mortg.* Court also held likewise:

> The Court holds, in accord with a growing consensus of case law, that § 227(c) of the TCPA applies to text messages for multiple reasons, developed below. In brief, although modern parlance tends to distinguish between phone calls and text messages, the meaning of "telephone call" in 1991—when the TCPA was

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    6

enacted—was broad enough to encompass text messages. The overwhelming weight of authority holds that § 227(b), a neighboring section using the same term, covers text messages, and the meaning of "telephone call" in § 227(c) is at least as broad as that in § 227(b). The FCC has also interpreted both § 227(b) and (c) to apply to text messages…

Section 227(b) of the TCPA uses the same term as § 227(c): "telephone call." And numerous federal courts of appeals have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages. *See, e.g.*, *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) ("The TCPA also applies to . . . text messages."); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages." (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013))); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the [TCPA]."); *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."); *see also Satterfield*, 569 F.3d at 954 (deferring to FCC's reasonable interpretation of the TCPA "to hold that a text message is a 'call'") ; *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (holding, under § 227(b), that receipt of one unwanted text message caused concrete injury sufficient for Article III standing)…

The weight of the above authority concerning § 227(b) strongly suggests that § 227(c)'s parallel usage of "telephone call[s]" applies to text messages. "[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning." *Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 372-73 (2d Cir. 2022) (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005)); *see also Pulsifer v. United States*, 601 U.S. 124, 149, 144 S. Ct. 718, 218 L. Ed. 2d 77 (2024) ("In a given statute, the same term usually has the same meaning."). Here, nothing indicates that Congress intended for the same term in § 227(c) to cover fewer modes of telephonic communications than that in § 227(b)…

The statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations. *See, e.g.*, *MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3; *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024). Given the weight of authority that § 227(b) covers text messages

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    7

despite its narrower scope as to modes of technology than § 227(c), it logically follows that § 227(c) also covers text messages. Limiting § 227(c)'s reach to telephone voice calls while § 227(b) covers voice as well as text messages would create an irrational asymmetry at odds with the statute's text and structure. It would also be at odds with the Second Circuit's recognition that "the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA." *Melito*, 923 F.3d at 88.

*Wilson v. Better Mortg. Corp.,* 2025 U.S. Dist. LEXIS 251694, at *11, *14-*15, *17-*19 (S.D.N.Y. Dec. 5, 2025).

In short, *Howard* confirms what *Satterfield* already made clear: a "call" under the TCPA includes a text message call, even under *de novo* review after *Loper Bright*. And because § 227(c) uses the same statutory term, "telephone call," there is no textual basis to assign it a narrower meaning in the Do-Not-Call context than in the neighboring provisions of § 227(b). *See also* 47 C.F.R. § 64.1200(e) (confirming the FCC's rule applies to calls and text messages).

Defendant's attempt to distinguish *Howard* by isolating the phrase "telephone call" is equally unpersuasive, as the *Taha* court explained. Contemporary dictionaries at the time the TCPA was enacted simply defined a "telephone call" as a "call" *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7. For example, the 1991 Oxford Encyclopedic English Dictionary defines a "telephone call" simply as a "call," and defines "call" as "to communicate or converse with *by telephone* or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under that definition, a "telephone call" is simply a communication made by telephone (or a radiotelephone, which a cell phone is), which plainly includes text messages sent from one telephone to another. That holding was not dependent on *Chevron* deference and reflects the functional reality that text messages are a form of telephonic communication regulated by the statute. Defendant's argument that the modifier "telephone" somehow narrows the term "call" to

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                8

exclude text messages and include voice calls only elevates semantics over substance and ignores the broader statutory context.

Every communication regulated by the TCPA, including text message calls, is necessarily made to a telephone number and received on a telephone device. Courts do not interpret statutory terms in isolation or in a manner that would create inconsistent meanings across adjacent provisions of the same statute. Accepting Defendant's construction would improperly create a split within § 227 itself, where "calls" include text messages in some provisions but not others, despite identical consumer harms. Nothing in the statutory text or Ninth Circuit precedent supports such an artificial distinction. As the *Taha* Court explained, Defendant "overemphasizes the significance of the word 'telephone' in this context." *Taha*, 2026 U.S. Dist. LEXIS 54376, at *7. And the Court further explained that where Congress intends to confine a TCPA provision to audible communications, it knows how to do so: in *Trim v. Reward Zone USA LLC*, the Ninth Circuit focused on Congress's use of the word "voice" and held that the messages there were not covered "because they did not include audible components." *Id.* at *8* (citing *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1158, 1160–61 (9th Cir. 2023)). Congress did so in other portions of the Communications Act. *E.g.*, 47 U.S.C. § 225 (distinguishing text-based telephone "calls" from "voice transmission services"). As *Taha* concluded, had Congress intended to exclude textual communications from § 227(c)(5), "it would have used the phrase 'voice call,' rather than 'telephone call.'" *Id.* That reasoning applies with full force here.

Accordingly, whatever rhetorical distinction Defendant attempts to draw between § 227(b) and § 227(c), it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                9

### ii. Section 227(c) authorizes the FCC to prohibit unwanted telephone solicitations of all kinds, including text message calls.

The core of § 227(c) is its prohibition on sending "telephone solicitations" to numbers on the Do Not Call List. 47 U.S.C. § 227(c)(1), (3)(F). The statute defines a "telephone solicitation" in relevant part to mean "the initiation of a telephone *call or message* … which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added).

That definition plainly encompasses modern text message calls. As further explained below, the word "call" in the TCPA encompasses text messages. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."). That interpretation follows from "the ordinary, contemporary, and common meaning of the verb 'to call.'" *Satterfield*, 569 F.3d at 953–54 & n.3. And even if the word "call" weren't enough, contemporary dictionary definitions of the word "message" emphasized that it encompassed "[a]ny notice, word, or communication, no matter the mode and no matter how sent." *Message*, *Black's Law Dictionary* (6th ed. 1990).[1] So a "message" can be spoken *or* written. More generally, the definition of "telephone solicitation" focuses not on a communication's form but whether it has a commercial purpose. *See, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493 (7th Cir. 2025). So, Congress referred to "call or message" disjunctively in order to capture the broadest possible range of potential communication mediums. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). And "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *see Wilson v. Skopos Fin., LLC*, 2025 WL 2029274, at *4 (D. Or. 2025). And, as

---

[1] *See also, e.g.*, *Message*, Webster's New Collegiate Dictionary (9th ed. 1991) ("a communication in writing, in speech, by signals"); *Message*, Oxford English Dictionary (2d ed. 1989) ("an oral or written communication sent from one person to another").

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS               10

discussed, in *Howard*, 164 F.4th, 1123–24, the Ninth Circuit reaffirmed *Satterfield's* central holding, even in the absence of *Chevron* deference.

Relatedly, Papa Murphy's says that an entirely separate provision distinguishes between calls and text messages. It asserts that in 2018, Congress amended Section 227(e) and allegedly distinguished text messages from calls. As an initial matter, that reading discounts the fact that Congress explicitly directed that nothing in section 227(e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with [the TCPA]." Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That includes the judicial decisions and FCC rules and orders that made clear that "call" in section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*, *Satterfield*, 569 F.3d at 954.

As Judge Gettleman explained, this very action by Congress is an example of statutory *stare decisis* in which Congress implicitly *endorsed* the prevailing view at the time, that text messages are calls. *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3-4 (N.D. Ill. Mar. 27, 2026) (cleaned up). Other Courts have agreed. For example, the District of Connecticut held just a few days ago that "the legislative history of the 2018 Amendments contains no evidence that Congress discussed the impact of the proposed Amendments on § 277(c)(5) [sic] or considered the private right of action at all when it passed the 2018 TCPA Amendments." *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL 884170, at *8 (D. Conn. Mar. 31, 2026); *Newell v. Childrens Dental Health Assocs, LLC*, No. 2:25-cv-05238, ECF No. 25 (E.D. Pa. Apr. 6, 2026) ("Congress expressly addresses its concerns about "*caller* identification information" to both "voice" and "text" services. Thus, the face of § 227(e) further confirms our view that a "call" can implicate a voice conversation or a text conversation.").

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    11

Section 227(c) does not specifically use the words "text messages" or "SMS messages." That is unsurprising, because the TCPA was enacted in 1991, and the first-ever text message wasn't sent until 1992. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015). But, as just explained, the statute *does* explicitly cover any "telephone solicitation," which is broadly defined to include any "call or message." 47 U.S.C. § 227(a)(4). *Rabbitt*, 2026 WL 851279, at *3. That broad and inclusive definition governs, not the specific facts or technology that Congress would have had in mind in 1991. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998); *Nat'l Cable & Telecom Ass'n v. FCC*, 567 F.3d 659, 665 (D.C. Cir. 2009). "The fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 550 (2d Cir. 2024).

> iii. **Just as § 227(c)'s substantive provisions allow the FCC to regulate text messages, the private right of action in § 227(c)(5) authorizes suit when those rules are violated.**

Section 227(c)(5) grants a private right of action to enforce the Do Not Call List regulations to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under § 227(c). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019). Accordingly, the FCC has recognized since 2003 that when the TCPA says "call," it means not just traditional voice calls but also modern text message calls. 18 FCC Rcd. 14115 ¶ 165. And many courts have reached the same conclusion. *See, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)."); *Satterfield*, 569

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                12

F.3d at 954 (holding "that a text message is a 'call' within the TCPA"); *Dawson v. Porch.com*, 2024 WL 4765159, at *4 (W.D. Wash. 2024) (collecting cases).

That meaning of "call" is especially clear in nearby provisions. Notably, there is only one other reference to "calls" in § 227(c), and it has the same breadth as "telephone solicitations." In § 227(c)(1)(D), Congress directed the FCC to assess whether it needed additional statutory authority "to further restrict telephone solicitations, including those *calls* exempted under subsection (a)(3)" (emphasis added). In the original TCPA, subsection (a)(3) contained the statutory definition of "telephone solicitation." *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395 (1991). So § 227(c)(1)(D)'s reference to "calls exempted under" the definition of "telephone solicitation" presumably mirrored that definition—which, as explained above, broadly encompasses a "telephone call or message" and thus covers text messages even more clearly than the word "call" standing alone. 47 U.S.C. § 227(a)(4).

The Court in *Wilson,* 2025 U.S. Dist. LEXIS 251694 (S.D.N.Y.) held:

> District court decisions have largely held that § 227(c) applies to text messages. *See, e.g.*, *Mujahid*, 2025 WL 3140725, at *3; *Medvidi*, 2025 WL 2856295, at *2–4; *Skopos Fin.*, 2025 WL 2029274, at *4–5; *Hudson*, 2024 WL 4190513, at *8; *Pariseau*, 619 F. Supp. 3d at 1207; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4–5 (D. Mass. Nov. 29, 2021); *see also Bosley v. A Bradley Hosp. LLC*, No. 25 Civ. 22336, 2025 WL 2686984, at *5 (S.D. Fla. Sept. 19, 2025) (no dispute that § 227(c) applies to text messages); *Evers v. CampaignSidekick, LLC*, 2025 WL 2896818, at *4 (N.D. Ill. Oct. 10, 2025) (same); *Connor v. Servicequick Inc.*, No. 24 Civ. 2286, 2025 WL 2855393, at *2 (D. Colo. Oct. 8, 2025) (same). These decisions turned on statutory construction, not agency deference, and thus are not called into question by *Loper Bright*.

Papa Murphy's relies on *Jones v. Blackstone Medical Services, LLC*, 2025 WL 2042764 (C.D. Ill. 2025) and *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 (N.D. Fla. 2025). Both

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    13

courts found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins and ends there." *Davis*, 2025 WL 2491195, at \*1.[2]

But those cases are unpersuasive. There, the courts decided that a text message could not be a "call" for purposes of § 227(c)(5)'s private right of action because "[t]ext messaging was not an available technology in 1991," and "in today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* at \*4. But that is not the right way to interpret a statute. As the Supreme Court has cautioned—"modern intuition" doesn't always match "evidence of [a] term's meaning at the time of [a statute]'s adoption." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). When there's a mismatch, the original meaning of the text is what controls, not present-day usage. *See id.* at 114–16. But *Jones* and other cases go astray when they reflexively apply those present-day intuitions about how text messages are discussed to language from 1991, before the first text message was ever sent.[3]

*Jones* and its progeny[4] get statutory interpretation wrong as a textual-techno-historical matter. The courts' analysis in these cases systematically exclude the experiences and needs of deaf and hard-of-hearing individuals, who have used text-based communication for telephone calls since long before the TCPA was enacted in 1991. The *Davis* court's assertion that "no normal person refers to a text message, or thinks of a text message, as a 'call,'" is flawed in that it excludes those who have used text-based communication to make "telephone calls" long

---

[2] The Defendant similarly relies on other 11th Circuit cases. *See e.g. Sayed v. Naturopathic Holistic Health, Inc.,* Case No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759 \* 2 (M.D. Fla. Oct. 24, 2025); *see also Radvansky v. 1-800-Flowers.com, Inc.,* 2026 WL 456919 at \*3-5 (N.D. Ga. Feb. 17, 2026). The Defendant relies on one 7th Circuit district court case, but that matter is currently on appeal.

[3] *Compare, e.g.*, *Davis*, 2025 WL 2491195, at \*1 (relying on how "a normal person refers to a text message"), *with* 47 U.S.C. § 227(b)(1)(A)(iii) (using the word "call" to refer to a message sent to a "paging service," the most analogous type of communication in 1991).

[4] The same faulty reasoning is embraced nearly identically in all three cases.

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                14

before 1991. *Davis*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). This reasoning is not neutral. It is profoundly ableist. For millions of Americans who rely on TTY/TDD (teletypewriter/telecommunications device for the deaf) technology or have other hearing disabilities, text messages are not just "telephone calls," they are often the *only* way these individuals can make and receive "telephone calls."

The *Davis* court's assertion that "no normal person refers to a text message, or thinks of a text message, as a 'call'" is particularly revealing and disturbing. What is a "normal person" in this analysis? Apparently, it is someone who can hear and who uses voice communication. Deaf and hard-of-hearing individuals, who very much do think of text messages as telephone calls, are implicitly excluded from the Court's definition of "normal." This is precisely the kind of assumption that disability rights law has sought to combat for decades. Under the reasoning of *Jones*, and its progeny, deaf individuals would have had no private right of action under § 227(c)(5), even in 1991, because they did not receive "telephone calls," they received text message calls. The fact that text messages are the only way these individuals can receive telephone calls is deemed irrelevant. They are left without protection from the very harms that Congress sought to prevent when it enacted the TCPA. By defining "telephone call" based solely on the experience of hearing persons, *i.e.* involving voice communication, these decisions effectively write deaf and hard-of-hearing individuals out of the TCPA's protections entirely.

It is therefore incorrect to assert that the original public meaning of "telephone calls" extended only to voice-based communications when the statute was enacted in 1991. It did not. The premise of *Davis* and its progeny, that text messaging via telephones did not exist in 1991, is demonstrably false when one considers the universe of text-based telephone communications that existed in 1991, and, indeed, had existed for decades before. TTY/TDD devices allow deaf

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                15

and hard-of-hearing individuals to communicate over telephone lines by typing text messages that are transmitted in real-time to another TTY/TDD device or to a relay operator. This technology has been available since the 1960s. And that same line of devices has grown into fax machines, pagers, telex machines, and, yes, text messages.

By 1991, TTY/TDD devices were widely used by the deaf community, and their use was explicitly recognized in federal telecommunications law. The Americans with Disabilities Act, enacted in 1990, just one year before the TCPA, *required* telephone companies to provide text-based telephone services to deaf and hard of hearing individuals on equal footing to "voice transmission services." 47 U.S.C. § 225. Congress was acutely aware in 1991 that "telephone calls" could be, and for millions of deaf Americans, routinely were, conducted through text-based communication. Indeed, it so recognized when it used the term "voice transmission services" to refer to the particular subset of telephone calls sent using a voice, as opposed to text-based "telecommunications relay services." And, Congress explicitly referred to such text-based services as "calls," for example, in prohibiting relay operators from "keeping records of the content of any such conversation beyond the duration of the *call*." 47 U.S.C. § 225(d)(5). Even today, text messaging is a blessing for deaf and hard-of-hearing individuals, who use such communication to more effectively communicate without needing to secure the services of a relay operator to make such "calls" each time they desire to use the telephone.

"The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Better Mortg.*, 2025 WL 3493815 at *5. When Congress enacted the TCPA in 1991, it was legislating against the backdrop of the recently enacted ADA and the longstanding use of text-based telephone call technology used by the deaf community and millions of individuals and

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    16

businesses who had teletypewriters, pagers, and telex machines alike. Congress knew that "telephone calls" could take multiple forms, including voice calls or text messages. To interpret "call" in a way that excludes text-based communication is to ignore this historical context and, even worse, to effectively discriminate against people with disabilities. If a text "call" to a TTY device or pager can violate the TCPA, a text "call" to a cell phone can too, because it shows "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1004–05.

Similarly, as explained above, it's irrelevant that Congress couldn't have text messages specifically in mind in 1991. "The mere fact that Congress did not envision the ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support." *Skopos Fin.*, 2025 WL 2029274, at *4. *Jones* also disregarded the FCC's longstanding interpretation of "call" because the FCC, until 2023, had only articulated that interpretation in the context of the statute's autodialer prohibitions. 2025 WL 2042764, at *4–5. But that's unsurprising for precisely the reasons outlined by the *Taha* Court. And neither *Jones* nor Papa Murphy's identifies any reason why there would be. *See United States v. Paulson*, 68 F.4th 528, 555 (9th Cir. 2023) (absent cause to think otherwise, "a word or phrase is presumed to bear the same meaning throughout a text").

But even putting aside this reasoning, it is incorrect to assert that the original public meaning of "telephone calls" extended only to voice-based communications when the statute was enacted in 1991. It did not. *Jones'* and *Davis'* premise, that text messaging via telephones did not exist in 1991, is false when one considers the universe of text-based telephone communications that existed in 1991, and, indeed, had existed for decades before. *Jones* and its progeny abdicated their interpretative responsibility, not just in terms of a demonstrably wrong textual analysis, but

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    17

also in ignoring the statutory framework and purposes of the TCPA. The TCPA's purpose was and is to protect consumers from unwanted telephone solicitations that invade their privacy and disrupt their daily lives. Unwanted text messages, particularly to individuals who are deaf and hard-of-hearing, are every bit as intrusive as unwanted voice calls, and perhaps more so, given the additional challenges implicit in living a life with hearing loss. To exclude text messages from the TCPA's protections based on a hyper-literal and historically ignorant reading of "telephone call" would thus defeat the TCPA's purpose. More troubling still, the courts' reasoning effectively punishes Congress for having been forward-thinking about disability access. At bottom, Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication," in the TCPA, just as in the ADA, where it recognized text "calls." This choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls." When Congress enacted the TCPA in 1991, it did so with full knowledge that deaf individuals used text-based telephone communication via TTY/TDD devices, having *required* telephone companies to provide such devices and services a year prior. Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication." This choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls."

Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word "call" should still carry the day. As previously explained, the FCC is regulating here with discretionary authority expressly delegated by Congress. Acting under that express delegation, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier," "eliminate[s] any potential confusion in the industry," and

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    18

aligns with both its determination that cell phone numbers are eligible for protection and the established meaning of the word "call" in other TCPA contexts. 38 FCC Rcd. 12256–57 ¶¶ 26–27. Because the FCC acted reasonably and consistently in reaching that conclusion, this Court should affirm its "reasoned decisionmaking." *Loper Bright*, 603 U.S. at 395. Or, at a minimum, this court should look to the FCC's longstanding and consistent interpretation of the word "call" as an "informed judgment to which [it can] properly resort for guidance." *Id.* at 388 (citing *Skidmore*, 323 U.S. at 139–40). Judge McShane got this analysis correct when he held: "The FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA." *Skopos Fin., LLC*, *12-13. This Court should do the same.

### iv.     The plain meaning of the word "call" includes text messages

To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014) ("To determine a word's plain and ordinary meaning, we may refer to standard English language dictionaries.") Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call' is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

As noted by the *Taha* Court, the basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    19

telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Better Mortg. Corp.*, 2025 WL 3493815, at *5. In this respect, the *Stockdale* court simply appears to have cherrypicked definitions from other dictionaries in support of its proposition while ignoring the vast majority of other dictionaries that defined a "telephone call" simply as a "call," which itself indicates no preference for vocal communication. "Although many people assume that the first sense listed in a dictionary is the 'main' sense, that is often quite untrue." *United States Postal Serv. v. Konan*, 146 S. Ct. 736, 745 (2026). The definitions the *Stockdale* Court pointed to were the oldest, not primary. And we "do not presume that Congress intended the *oldest* usage, but rather the ordinary one in" 1991, and contemporaneous evidence shows that Congress understood text-based telephone calls to be "calls" in 1991. *Id.*; *see* Section I.c, *supra*.

And courts have long recognized that the definition identified in *Satterfield*—any attempt to communicate with someone by telephone—is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortg. Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 954))

Indeed, because it has been broadly understood for decades that the word "call" in the

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                20

TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"). So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9.

**B.      As Numerous Ninth Circuit Courts Have Held, Plaintiff Pleads Facts Supporting His Second Cause of Action**

Papa Murphy's gripe with Plaintiff's second cause of action is that the Plaintiff allegedly doesn't plead sufficient facts to show that Defendant violated the TCPA's caller ID restrictions contained in 47 C.F.R. § 64.1601(e). But Plaintiff plainly pleads facts establishing how all three alternate prongs of the statute were violated. To see why, consider the express text of the statute itself. It requires "any person or entity that engages in telemarketing" to "transmit caller identification information." *Id.*  This means that (1) it must include "either CPN or ANI," (2) "the name of the telemarketer," and the (3) "telephone number so provided must permit any individual to make a do-not-call request during regular business hours."

The Complaint makes clear that each prong of the statute was violated, each one of which is sufficient to establish a violation of § 64.1601(e). First, the Complaint makes clear that the text message calls transmitted the "caller ID in the form of both CPN and ANI, as 90421." However, that number doesn't comply with the requirements for a "CPN" or "ANI." This is not compliant, and it also means that it cannot be called "during regular business hours" to make a do-not-call request. Under 47 CFR § 64.1600(e), the FCC defines Calling Party Number (CPN) as the "subscriber line number or the directory number contained in the calling party number parameter of the call setup message associated with an interstate call on a Signaling System 7 network," and it defines an ANI in terms of *delivery* of the CPN or other alternate billing number, as "the

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    21

*delivery* of the calling party's billing number by a local exchange carrier to any interconnecting carrier for billing or routing purposes, and to the subsequent delivery of such number to end users." 47 CFR § 64.1600(b).

A telephone number code like 90421 is not a compliant "CPN" under the applicable regulation, meaning that no CPN, and consequently, no ANI, was transmitted *at all*. And because no CPN or ANI was transmitted, the (fake) number that was transmitted was not a "CPN" or "ANI" that permitted the Plaintiff, or "*any individual*," including an individual with a voice-only telephone, "to make a do-not-call request during regular business hours." To Papa Murphy's point, not only is its position here at odds with its position in terms of text messages being calls, but also, a code like "90421" doesn't allow *any* individual, such as an individual possessing a landline phone or a phone that doesn't have the capacity to send out text message calls, to make a Do Not Call request during normal business hours. To see why, one must understand the inner workings of Signaling System 7 ("SS7"). Simply put, a short code like "90421" has no meaning in the SS7 routing tables, is unrouteable by SS7, and can't be reverse-routed to identify an originating or billing line (*i.e.* CPN or ANI) to receive an SS7-routable voice call.

The SS7 signaling standards dictate that the Calling Party Number (CPN) parameter is carried in the Initial Address Message (IAM) and contains the Telephone Number (TN) of the originating end user. ATIS-1000113.2015-Chapter 2, Clause 2.16, Calling Party Number, and ATIS-1000113.2015-Chapter 3, Clause 3.7, Calling Party Number. That field should be populated with a valid 10-digit North American Numbering Plan (NANP) subscriber line number or directory number; otherwise, it is considered "phantom traffic" since it lacks conforming identifying information. ATIS-0300106, Chapter 8, Clause 2.1, Phantom Traffic (further noting that "[a]lthough 47 C.F.R. §64.1601 requires that the CPN be transmitted where technically

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                22

feasible, the technical content and format of SS7 signaling is governed by industry standards rather than by Commission rules.").

A short code like 90421 is only 5 digits, which creates several problems. First, it doesn't conform to the NANP structure. NANP numbers are 10 digits (or 1+10 for the country code). The CPN parameter in the IAM expects either a national (10 digit) or international (E.164) compliant number. A five-digit string does not map to any valid CPN parameter. TRAVIS RUSSELL, SIGNALING SYSTEM #7 360-361 (3rd ed 2002) (outlining the structure of the CPN parameter as including two addresses (i.e. CPN and ANI), digits 0 through 9, spares, codes, and an end of pulse signal). So, as a textbook technical matter, "90421" isn't a valid CPN or ANI since it's unmappable to the CPN or ANI fields of the IAM of an SS7 message. Second, short codes like "90421" simply do not exist in the circuit-switched layer of the SS7 network at all. As such, a short code has no meaning in the SS7 routing tables and can't be reverse-routed to identify an originating line to call back.

Turning to the regulation here, the regulation requires that CPN be transmitted so the terminating carrier can deliver a routable telephone number that "any individual" can call "to make a do-not-call request during regular business hours." The Plaintiff has plainly pled a factual allegation, that it is "not possible to call that number back with a voice call to lodge a Do Not Call Request during regular business hours" and that nobody "calling that telephone number with a voice call receive an alternate number to call to lodge a Do Not Call request during regular business hours." Compl. ¶ 34, 36. As such, the caller ID that was transmitted failed to transmit a *real* "CPN or ANI" as defined by the regulations, and the number that was transmitted does not permit "any individual" to call that number to lodge a Do Not Call request during business hours because it is *unroutable through the telephone network* for the reasons described above. As such,

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                23

it violated at least two parts of 47 C.F.R. § 64.1601(e).

But what of the third part, the requirement that the call transmit the "the name of the telemarketer?" This plainly fails, too. In order to query the CNAM (Calling NAMe) database, an SS7 message must transmit sufficient information to query an LIDB database using the CPN. RUSSELL, 72. It's clear: if there's no valid CPN, there's no CNAM to query in an LIDB database. Defendant doesn't even address, and fails to acknowledge, that it did not transmit the "name of the telemarketer" and so it has conceded this point. Multiple courts have held that the failure to include the caller ID name itself violates the express terms of 47 C.F.R. § 64.1601(e), even if the caller's name is included in the text of the message. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 584 (E.D. Pa. 2025); *Novia v. Mobiz, Inc.*, No. 25-CV-11036-AK, 2026 WL 752181, at *2 (D. Mass. Mar. 17, 2026). Plaintiff has therefore plainly stated a claim for violation of any one of the three required subparts of 47 C.F.R. § 64.1601(e).

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied.

*[Counsel signatures to follow on next page.]*

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                    24

RESPECTFULLY DATED AND SUBMITTED this 7th day of April, 2026.

/s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com

*I certify that this memorandum
contains 8,110 words in compliance
with the Local Civil Rules.*

Andrew Roman Perrong *(pro hac vice)*
**PERRONG LAW LLC**
2657 Mount Carmel Avenue
Glenside, PA 19038
T: 215-225-5529
a@perronglaw.com

Anthony Paronich *(pro hac vice)*
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
T: 617-485-0018
anthony@paronichlaw.com

*Counsel for Plaintiff and the Proposed Class*

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS                25

**CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on April 7, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 7th day of April, 2026.

Respectfully submitted,

*/s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com

*Counsel for Plaintiff and the Proposed Class*

PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS          26