182 F.4th 532
United States Court of Appeals, Seventh Circuit.

Seth STEIDINGER, et al., Plaintiffs-Appellants,
v.
BLACKSTONE MEDICAL SERVICES, Defendant-Appellee.

No. 25-2398
|
Argued May 21, 2026
|
Decided July 14, 2026

**Synopsis**
**Background:** Consumers brought class action against sender of marketing text messages, alleging violations of the Telephone Consumer Protection Act (TCPA) and seeking damages and declaratory and injunctive relief. The United States District Court for the Central District of Illinois, Jonathan E. Hawley, J., 792 F.Supp.3d 894, granted sender's motion to dismiss for failure to state a claim. Consumers appealed.

**Holdings:** The Court of Appeals, Kirsch, Circuit Judge, held that:

[1] subsection of TCPA creating a private right of action for an individual "who has received more than one telephone call" within specified period in violation of regulations under that subsection provides a remedy for unwanted telephone calls but not for unwanted telephone solicitations, and

[2] a text message is not a "telephone call" within meaning of that subsection.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

West Headnotes (11)

[1] **Federal Courts** Dismissal or nonsuit in general

Court of Appeals reviews de novo a district court's decision to dismiss a complaint. Fed. R. Civ. P. 12(b).

[2] **Federal Courts** Statutes, regulations, and ordinances, questions concerning in general

Court of Appeals reviews issues of statutory interpretation de novo.

[3] **Statutes** Plain Language; Plain, Ordinary, or Common Meaning

Court interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.

[4] **Statutes** Contemporary and Historical Circumstances

While every statute's meaning is fixed at time of enactment, new applications may arise in light of changes in world.

[5] **Statutes** Context
**Statutes** Statutory scheme in general

Court reads the words of a statute in their context, which includes the overall statutory scheme.

[6] **Statutes** Similarity or difference

In interpreting a statute, court presumes that, when Congress used a different term in two subsections of same section, it intended a different meaning.

[7] **Telecommunications** Device Used

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**Telecommunications** Unsolicited e-mail or text message

Subsection of Telephone Consumer Protection Act (TCPA) creating a private right of action for an individual "who has received more than one telephone call" within specified period in violation of regulations under that subsection provides a remedy for unwanted telephone calls but not for unwanted telephone solicitations, which include not merely calls but also messages. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(c)(5).

2 Cases that cite this headnote

[8] **Telecommunications** Unsolicited e-mail or text message

A text message is not a "telephone call" within meaning of subsection of Telephone Consumer Protection Act (TCPA) creating a private right of action for an individual "who has received more than one telephone call" within specified period in violation of regulations under that subsection. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(c)(5).

2 Cases that cite this headnote

[9] **Administrative Law and Procedure** Deference to or Consideration of Agency's Construction in General

Court is not bound by an agency's interpretation of a statute; rather, court will interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.

1 Case that cites this headnote

[10] **Administrative Law and Procedure** Discretion of agency; abuse of discretion

**Administrative Law and Procedure** Deference to or Consideration of Agency's Construction in General

Deference to agency under the arbitrary-and-capricious standard of Administrative Procedure Act (APA) is reserved for review of an agency's exercise of discretion granted by a statute, as opposed to review of agency's interpretation of a statute. 5 U.S.C.A. § 706.

[11] **Telecommunications** Advertising, Canvassing, and Soliciting; Telemarketing

In interpretation of Telephone Consumer Protection Act (TCPA), TCPA's remedial nature cannot overcome the clear commands of the text and the statutory context. Communications Act of 1934 § 227, 47 U.S.C.A. § 227.

Appeal from the United States District Court for the Central District of Illinois. No. 1:24-cv-01074 — **Jonathan E. Hawley**, *Judge.*

**Attorneys and Law Firms**

Ryan Lee McBride, Attorney, Kazerouni Law Group, APC, San Diego, CA, Abbas Kazerounian, Attorney, Kazerouni Law Group, APC, Costa Mesa, CA, for Plaintiffs-Appellants.

John P. Heil, Jr., Attorney, Heyl, Royster, Voelker & Allen, P.C., Peoria, IL, Ryan C. Childress, Traci Rollins, Attorneys, Gunster, Yoakley & Stewart, West Palm Beach, FL, Lauren Vickroy Purdy, Attorney, Gunster, Yoakley & Stewart, Jacksonville, FL, for Defendant-Appellee.

Jeremy Joseph Broggi, Attorney, Wiley Rein LLP, Washington, DC, for Amici Curiae National Republican Congressional Committee, National Republican Senatorial Committee.

Mark S. Eisen, Attorney, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL, for Amicus Curiae Fashion Nova Holdings, LLC.

Russell Balikian, Attorney, Andrew Y. Ebrahem, Gibson, Dunn & Crutcher LLP, Washington, DC, Mariel A. Brookins, Maria Monaghan, Attorneys, Chamber of Commerce of the United States of America, Washington, DC, for Amicus Curiae Chamber of Commerce of the United States of America.

Before Kirsch, Pryor, and Maldonado, Circuit Judges.

**Opinion**

Kirsch, Circuit Judge.

***534** Frustrated by an onslaught of marketing text messages from Blackstone Medical Services, the plaintiffs filed a consolidated class action complaint alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059(5). Blackstone moved to dismiss the TCPA claims. It argued principally that § 227(c)(5), the provision on which the plaintiffs relied, only creates a private right of action for phone calls, not text messages. The district court agreed and dismissed the case after declining to exercise supplemental jurisdiction over the remaining state-law claim. On appeal, we consider whether § 227(c)(5)'s reference to unwanted telephone calls extends to text messages. Because we conclude that § 227(c)(5) does not permit plaintiffs to sue for the receipt of unwanted texts, we affirm.

I

The plaintiffs are individuals who received marketing text messages and calls from Blackstone Medical Services, urging them to buy the company's home sleep tests. The plaintiffs assert that they continued to receive these texts and calls even though they indicated (e.g., by replying "STOP" to a text message or by adding themselves to the National Do-Not-Call Registry) that they did not want to be contacted. They therefore filed a consolidated class action complaint against Blackstone, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Florida Telephone Solicitation Act, ***535** Fla. Stat. § 501.059(5), seeking monetary, injunctive, and declaratory relief.

Blackstone moved to dismiss the plaintiffs' TCPA claims, arguing that the provision under which they filed suit, 47 U.S.C. § 227(c)(5), does not apply to text messages. The district court agreed with Blackstone. The court found that § 227(c)(5), which creates a private right of action for those who have received unwanted telephone calls, does not cover text messages. Because the crux of the consolidated class action complaint was the receipt of numerous text messages, the district court concluded that the plaintiffs failed to state claims for violations of the TCPA.[*] The court declined to exercise supplemental jurisdiction over the remaining FTSA claim and dismissed the plaintiffs' suit.

II

A

**[1]** **[2]** We review a district court's decision to dismiss a complaint, along with issues of statutory interpretation, de novo. *Nat'l Shopmen Pension Fund v. DISA Indus., Inc.*, 653 F.3d 573, 578 (7th Cir. 2011). This appeal turns on a single issue: whether text messages are telephone calls within the meaning of § 227(c)(5). Based on the ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227, we find that texts are not calls, so § 227(c)(5) does not authorize the plaintiffs' suit.

**[3]** We start with the statute's text, interpreting it "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton County*, 590 U.S. 644, 654, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020). Section 227(c)(5) creates a private right of action for an individual "who has received more than one *telephone call* within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5) (emphasis added). It's undisputed that "telephone call" couldn't have been thought to cover text messages when the TCPA was enacted in 1991, because the first text message was not sent until the following year. See *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016) (noting that the first text message was sent in December 1992).

**[4]** Blackstone thus argues that the ordinary public meaning of telephone call can't encompass a text message. But "[w]hile every statute's *meaning* is fixed at the time of enactment, new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284, 138 S.Ct. 2067, 201 L.Ed.2d 490 (2018). So, for instance, " 'money' ... must always mean a 'medium of exchange,' " but "what *qualifies* as a 'medium of exchange' may depend on the facts of the day." *Id.* (giving, as an example of money, electronic transfers of paychecks).

With that principle in mind, we consider what telephone call meant in 1991. The TCPA doesn't offer a definition, so we turn to contemporaneous dictionary definitions for guidance. See *Delaware v. Pennsylvania*, 598 U.S. 115, 127–28, 143 S.Ct. 696, 215 L.Ed.2d 24 (2023). Then, a telephone was "[a]n instrument for reproducing sounds at a distance[.]" *Telephone*, Webster's Ninth New Collegiate

Dictionary ***536** (1991). And a call meant "to get or try to get into communication by telephone." *Call, id.* Thus, in 1991, a "telephone call" referred to communication via sound.

Text messages do not reproduce sounds, suggesting that they do not qualify as a new application of telephone call within the meaning of that term. See *Wis. Cent. Ltd.*, 585 U.S. at 284, 138 S.Ct. 2067. The plaintiffs reject this conclusion and advocate for a broader meaning of telephone call, which would encompass all communications by telephone. Otherwise, they argue, the TCPA's protections will become increasingly ineffectual as new technologies emerge. Though the plaintiffs are correct that § 227(c)(5) covers more than telephone calls as they existed in 1991 (when such calls were often to landlines), we are cognizant that "[t]oo much 'liberality' will undermine the statute as surely as too literal an interpretation would." *Matter of Erickson*, 815 F.2d 1090, 1094 (7th Cir. 1987). We've therefore rejected "the march of technology" standing alone as sufficient to identify the meaning of statutory language. *Id.*

The provisions surrounding § 227(c)(5) provide further evidence that it doesn't create a private right of action for text messages. Sections 227(c)(1) and (c)(2) direct the Federal Communications Commission to engage in rulemaking "to protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). And § 227(c)(3) and (c)(4) discuss the creation of a national database of individuals "who object to receiving *telephone solicitations*," i.e., the creation of the National Do-Not-Call Registry. *Id.* § 227(c)(3) (emphasis added).

We note that these other subsections of § 227(c) consistently use the term "telephone solicitation," which the TCPA defines as "the initiation of a *telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" *Id.* § 227(a)(4) (emphasis added). Yet § 227(c)(5) only creates a private right of action for the receipt of more than one "telephone call" within a 12-month period. It doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation.

**[5]** **[6]** **[7]** The plaintiffs urge us to overlook this difference and insist that § 227(c)(5) creates a private right of action for all telephone solicitations. But we read the words of a statute in their context, which includes the overall statutory scheme. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). And we presume that because Congress used a different term in these two subsections of § 227, it intended a different meaning. See *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58, 142 S.Ct. 1783, 213 L.Ed.2d 27 (2022) (explaining the meaningful-variation canon). The best reading of § 227(c)(5) is therefore that it provides a narrower remedy than recovery for all forms of telephone solicitation; plaintiffs may sue after receiving unwanted telephone calls, but not unwanted telephone solicitations (which include not merely calls but also messages).

**[8]** Because § 227's definition of telephone solicitation distinguishes between calls and messages, the two must refer to different forms of communication by telephone. See *Nielsen v. Preap*, 586 U.S. 392, 414, 139 S.Ct. 954, 203 L.Ed.2d 333 (2019) (per the canon against surplusage, "every word and every provision is to be given effect"). Based on how telephone messages were understood at the time of enactment, we conclude that modern-day text messages are better understood as messages, ***537** not calls. The kinds of unwanted messages contemplated in 1991 include those delivered by an artificial or prerecorded voice, see § 227(b)(1)(B), and those sent via fax machine, see § 227(d)(1). Section 227(d)(1), about fax messages, is particularly instructive. The statute defines a telephone facsimile machine as equipment that can "transcribe text or images, or both, from paper into an electronic signal," or vice versa (i.e., transcribe text or images from an electronic signal onto paper). 47 U.S.C. § 227(a)(3). And it articulates standards for "send[ing] any message" via a telephone facsimile machine "us[ing] a computer or other electronic device." *Id.* § 227(d)(1)(B). Section 227(d)(1) shows that—though Congress in 1991 didn't contemplate text messages—it did consider something analogous, i.e., text-based communications sent by an electronic device through a telephone line. And it regarded those communications as messages, not calls.

Section 227(c)(1)(D) doesn't suggest otherwise. It refers to "calls exempted under subsection (a)(3)," and (a)(3) defines telephone facsimile machine. But this doesn't mean that faxes are calls. Rather, this is a drafting error stemming from Congress's 2005 amendments to the TCPA. Congress changed the numbering in section (a) without updating the cross-reference in § 227(c)(1)(D), which should refer—as it did at enactment—to the definition of telephone solicitation, which is now § 227(a)(4). See Junk Fax Prevention Act of 2005, sec. 2(b), § 227(a), 119 Stat. 359, 360 (amending and renumbering

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

§ 227(a) without changes to § 227(c)(1)(D)); *Chickasaw Nation v. United States*, 534 U.S. 84, 90–91, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (finding that a legislative drafting mistake doesn't create interpretive ambiguity). Thus, both the overall statutory scheme and the ordinary public meaning of telephone call indicate that § 227(c)(5)'s private right of action does not extend to unwanted text messages.

B

The plaintiffs assert that decisions by the Supreme Court, this circuit, and other circuits support their reading of § 227(c)(5). They are mistaken. The plaintiffs point to the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), which involved a suit brought under § 227(b)(3), a different provision of the TCPA. There, the Court observed that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Id.* at 156, 136 S.Ct. 663. But the Court subsequently indicated that this was not a substantive decision on the meaning of "call," just an assumption for the purposes of the case since neither party contested the issue. See *Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 & n.2, 141 S.Ct. 1163, 209 L.Ed.2d 272 (2021) (citing *Campbell-Ewald* and stating that because "[n]either party disputes that the TCPA's prohibition also extends to sending unsolicited text messages," the Court would "therefore assume that it does without considering or resolving that issue"). Here, the parties dispute the meaning of telephone call, so we confront a question that the Supreme Court hasn't answered.

Our precedent interpreting the TCPA doesn't bear on the present issue, either. Citing *Campbell-Ewald*, and in a case involving § 227(b)(1)(A)(iii), we previously stated that text messages qualify as calls within the meaning of the TCPA. See *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); see also, e.g., *Douglas v. W. Union Co.*, 955 F.3d 662, 663 (7th Cir. 2020). But those cases were about another provision of § 227. See *Warciak*, 949 F.3d at 356; ***538** *Douglas*, 955 F.3d at 663. And they were decided before the Supreme Court's opinion in *Duguid*, which explained that *Campbell-Ewald* didn't resolve whether a text message is a call. See *Duguid*, 592 U.S. at 400 & n.2, 141 S.Ct. 1163.

For the same reasons, we are uncompelled by other circuits' decisions finding that texts are calls within the meaning of the TCPA. See, e.g., *Breda v. Cellco P'ship*, 934 F.3d 1, 4 n.1 (1st Cir. 2019) (considering a claim under § 227(b)(1)(A)(iii) and citing *Campbell-Ewald* for the proposition that the TCPA also applies to text messages); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 88–89 (2d Cir. 2019) (same); *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1124 (9th Cir. 2026) (considering a claim under § 227(b) and holding that "a text message is properly deemed to be a 'call' within the meaning of the TCPA"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (considering a claim under § 227(b)(1)(A)(iii) and relying on an FCC order to find that "[t]he prohibition against auto dialed calls applies to text message calls as well as voice calls"). *Breda* and *Melito* were decided based on *Campbell-Ewald*, before the Supreme Court's decision in *Duguid.* And all of these cases concern claims brought under § 227(b), not § 227(c)(5).

As an alternate source of authority, the plaintiffs note that the FCC's interpretation of § 227(c) supports their own. Congress authorized the FCC to make rules and regulations implementing the TCPA. See, e.g., 47 U.S.C. § 227(c)(1) (directing the FCC to initiate a rulemaking proceeding "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object"). In doing so, the FCC has interpreted "call" to include text messages, though it has not engaged in rulemaking to define the term for the purpose of § 227(c)(5). Most relevantly, the plaintiffs point to the FCC's decision to extend National Do-Not-Call Registry protections to text messages. Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls, 89 Fed. Reg. 5098, 5099 (Jan. 26, 2024) (codified at 47 C.F.R. § 64.1200(e)). But the National Do-Not-Call Registry was implemented pursuant to § 227(c)(3), which refers to "telephone solicitations," so the FCC's interpretation doesn't inform our understanding of § 227(c)(5), which refers only to telephone calls.

**[9]** **[10]** Even if it did, we aren't bound by the FCC's interpretation. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 168, 145 S.Ct. 2006, 222 L.Ed.2d 405 (2025). Rather, we "interpret the statute as courts traditionally do under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* The plaintiffs suggest that appropriate respect means deference under the arbitrary-and-capricious standard, but that's reserved for review of an agency's exercise of discretion granted by a statute. *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179–80, 145 S.Ct.

1497, 221 L.Ed.2d 820 (2025). This is a question of statutory interpretation, which we review de novo. *Id.* at 179, 145 S.Ct. 1497. That the FCC may have a different interpretation of call as that word appears elsewhere in the statute or in other contexts isn't sufficient to override our conclusion about the meaning of § 227(c)(5). See *McLaughlin Chiropractic Assocs., Inc.*, 606 U.S. at 155, 145 S.Ct. 2006. And to the extent that the plaintiffs contend that FCC regulations promulgated under other portions of subsection (c) must be actionable under ***539** § 227(c)(5) because (c)(5) refers to calls made "in violation of the regulations prescribed under this subsection," they are mistaken. That language simply clarifies which calls—i.e., those that violate relevant regulations—are the basis for a suit.

The plaintiffs' other counterarguments are similarly unpersuasive. They argue that Congress effectively adopted the FCC's interpretation when it repeatedly amended the TCPA without challenging the FCC's regulation of text messages as telephone calls. But that observation cuts both ways. We could presume, as the plaintiffs contend, that Congress was aware of the FCC's interpretation and adopted it when it amended the TCPA without changes to § 227(c). See *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239–40, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009). On the other hand, Congress has changed other portions of § 227 to clarify that text messages are covered. See Consolidated Appropriations Act, sec. 503(a), § 227(e)(1), (8), 132 Stat. 348, 1091–92 (2018) (amending § 227(e) to cover text messages and defining "text message" for the purposes of that subsection). It could have done the same for § 227(c)(5) but did not. Acknowledging these difficulties in interpreting congressional inaction, the Supreme Court has remarked that when "Congress has not comprehensively revised a statutory scheme but has made only isolated amendments ... it is impossible to assert with any degree of assurance that congressional failure to act represents affirmative congressional approval." *Alexander v. Sandoval*, 532 U.S. 275, 292, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (citation modified). Because that's the situation we find ourselves in here, we reject the plaintiffs' invitation to attribute persuasive significance to Congress's inaction regarding § 227(c). See also *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 424, 137 S.Ct. 1002, 197 L.Ed.2d 354 (2017) (emphasizing that "[c]ongressional inaction lacks persuasive significance in most circumstances").

The plaintiffs also invoke the presumption of consistent usage, observing that, in subsequent revisions of § 227, Congress has indicated that § 227(b) applies to text messages. See Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, sec. 10(a), § 227(i), 133 Stat. 3274, 3284 (2019) (discussing "a call made or a text message sent in violation of subsection (b)"). The plaintiffs suggest that since § 227(b) applies to text messages, § 227(c)(5) must also cover texts based on the "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). This argument fails at the first step, because § 227(b) and § 227(c)(5) contain different language. Subsection (b) prohibits a wide range of conduct, including certain calls to paging services and uses of telephone facsimile machines. See 47 U.S.C. § 227(b)(1). And subsection (b)'s corresponding private right of action is broadly framed: an individual may bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation." *Id.* § 227(b)(3)(A). Conversely, § 227(c)(5) only creates a private right of action for "[a] person who has received more than one telephone call within any 12-month period ... in violation of the regulations prescribed under this subsection." Thus, there is a difference in language that both explains and supports our conclusion that § 227(c)(5) does not apply to text messages.

**[11]** Finally, the plaintiffs' policy arguments and broad invocation of the TCPA's remedial nature "cannot overcome the clear commands of [§ 227(c)(5)'s] text and the statutory context." *Duguid*, 592 U.S. at 406, 141 S.Ct. 1163; see also *Hulce v. Zipongo Inc.*, 132 F.4th 493, 500 (7th Cir. 2025) (rejecting "appeals to the remedial ***540** nature of the TCPA" because the court's interpretation was based "on clear statutory language"). Congress's general concern about intrusive telemarketing practices doesn't necessarily mean that it adopted a broad definition of telephone call. *Duguid*, 592 U.S. at 408, 141 S.Ct. 1163. In fact, Congress specifically found that telemarketing calls create a public safety risk when they seize telephone lines needed for emergency or medical assistance. See Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394, 2394. Spam text messages don't pose this risk, making it unsurprising, or at the very least reasonable, that § 227(c)(5)'s private right of action would cover telephone calls but not messages.

Repeated, unwanted text messages are undoubtedly a nuisance. But they do not fall within the private right of action created by § 227(c)(5). Instead, spam messages may be curbed through agency action pursuant to other provisions of § 227, which we leave undisturbed. The district court's

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

rejection of the plaintiffs' TCPA claims was appropriate, as was its dismissal of the present suit.

Affirmed

**All Citations**

182 F.4th 532

Footnotes

* The plaintiffs didn't contend below or on appeal that their suit could proceed based on the alleged calls alone, so that argument is waived and we do not consider it. See *Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir. 1997) (finding it “axiomatic that arguments not raised below are waived on appeal”) (citation modified).

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.